[Civ. No. 5141. Third Appellate District.—November 7, 1934.]

N. ALBERDA et al., Appellants, v. ALFRED PINKNEY SMITH et al., Respondents.

C. H. McCray and Joseph Barcroft for Appellants.

Sherwood Green for Respondents.

PULLEN, P. J.—Plaintiffs were the owners of the furniture and furnishings of a hotel in Madera. Defendant

Crim was a real estate broker in Chowchilla. Smith was a salesman employed by him, and the Union Indemnity Company, a corporation, furnished the surety bond for Crim, as required by law.

Through defendants Crim and Smith an exchange was effected whereby the furnishings of the hotel were exchanged for a forty-acre tract of farm land near Chowchilla. The agreement, necessary for a better understanding of the issues, is in the following language:

"Agreement to Exchange Real Property.

"It is agreed that I, C. R. Heinmiller, of Chowchilla, California, owner of the following described property situated in the County of Madera, State of California, to-wit: Lots 557 and 558, in Block 38, Subdivision No. 2, of the Chowchilla Ranch, in Madera County, California, consisting of 40 acres of land, more or less, subject to a loan held by the Pacific · Coast Joint Stock Land Bank of $3557.21, and taxes not to exceed $350.00 otherwise clear and a $745.00 to be paid on pumping plant secured by apricot crop, and the following described personal property now on said premises, to-wit:

"Seven cows and one wagon, with an indebtedness of $300.00, payable $17.50 per month including interest, which I desire to exchange for property owned by N. Alberda, of Merced, which I have examined, situated in Merced, described as follows, to-wit: All furnishings of every kind and description now in building known as Central Hotel, in Merced, County of Merced, State of California, as per list attached hereto, free and clear of encumbrances, together with option to lease and letter of acceptance from owner of hotel above described, or his agent. Two hundred and no/100 Dollars in cash or its equivalent, at time of consummating exchange.

"Terms of Exchange: Exchange to be consummated not later than five days from this date.

. "I hereby appoint C. F. Crim and A. P. Smith my agents to act for me and agree to pay them for their services $250 00 as soon as exchange is completed and I herein agree that said agents shall collect a commission from the owner of the second property above described.

"Dated this 28th. day of April, 1932

"C. R. HEINMILLER."

On the back of the agreement appeared the following acceptance:

"Acceptance. This agreement, Witnesseth: That I, N. Alberda of Merced, owner of the property secondly herein described, hereby accept the said proposition of exchange for the first piece of property which I have examined and of which I approve, upon the terms herein stated, and agree to furnish title to said property within five days, showing title in myself and then to deliver said property to C. R. Heinmiller or his assigns. And I further agree to pay C. F. Crim and A. P. Smith Two Hundred Fifty and 00/100 Dollars commission for said exchange. And I herein agree that said agents shall collect commission from owner of first piece of property.

"Dated at Chowchilla, this 28th. day of April, 1932.

"N. ALBERDA."

Plaintiffs, considering themselves deceived and defrauded, brought this action. At the trial they established the value of the personal property which they exchanged for the real property and introduced certain statements of defendants which they allege were false and fraudulent and then offered to prove the value of the real property involved. This latter evidence the court refused to admit, whereupon plaintiffs rested. A motion for an instructed verdict was made and granted, and the jury thereupon returned a verdict in favor of defendants. From that judgment plaintiffs now prosecute this appeal.

Appellants set forth in their complaint, and offered evidence thereon, seven representations which they allege were false and untrue, which we will enumerate and discuss in order.

First: Defendants represented that the forty-acre tract of real property was worth nine thousand dollars ($9,000).

In answer to this objection it appears from the testimony of Mr. Alberda, the plaintiff in the action, that neither Mr. Crim nor Mr. Smith stated to him the value of the real property.

"Q. Did he (Mr. Smith) ever tell you what the place was worth? A. No, he did not tell me what the place was worth. . . . The Court: Q. Did you ever ask them (Crim

and Smith) how much the place was worth? . . . A. No sir. Q. And he never told you? A. No."

Appellants claim that while en route to the ranch defendant Smith pointed out certain ranches and said "that ranch sold for $9,000.00—this ranch sold for $10,000.00", and other similar statements coupled with the words, "and I do not think this is as good as the Heinmiller place".

Asked of Mr. Alberda: "Q. But they did not say the particular place you bought was worth $9,000.00, just the others? That is all they said about value? A. They showed us different places and said, 'that one just sold for $10,000.00', and 'there is a place I do not know what it brought, there is a millionaire living there', and he explained not half so good as the place they were going to show us. Q. And that is the way they told you the place was worth $9,000.00? A. Yes sir. Q. And that is the only way they told you that? A. Yes sir. Q. Did Mr. Smith ever make any representation to you about the value of the property outside of what he showed you—and other places around there? A. No, but I took my judgment when he told me about the other place."

In regard to the character of the soil upon the land itself, Mr. Smith testified: "We went out to Mr. Heinmiller's, to this Mr. Heinmiller ranch, and we drove in and got out— Mrs. Alberda says, 'Is there any alkali in that ranch, anything like that on this ranch,' and I says, 'I don't know, I have never been over it, let's go down and see' . . . " It also appears from the testimony of the witness that Mr. Smith, the salesman, was not familiar with the location of the ranch and had to inquire along the way as to the location thereof. It also appears from the testimony of Mrs. Alberda that when they arrived at the ranch Mr. Smith remarked to her that the place was in a run-down condition. "Q. Did he tell you that was a run-down place? A. Yes, sir. Q. That is the way he talked about the place he was trading? A. Yes, sir. Q. He never did point to the piece of land that you bought from him and say it was worth so much money, did he? A. The Heinmiller place? Q. Yes. A. No."

At most the testimony reveals that the agents while en route to the ranch in question made certain statements as to the value of the ranches that were passed and com-

pared these ranches with the Heinmiller property. At that time it was known to appellants that Smith, who made these statements, had never seen the Heinmiller ranch. It is the general rule that statements as to value, where they are given as mere matters of opinion and where the opportunity is present to ascertain the truth thereof and to ascertain the real value, are matters of opinion only. (*Craig* v. *Wade,* 159 Cal. 172 [112 Pac. 891] ; 12 Cal. Jur., p. 729.)

It appears from the acceptance that appellants examined the property personally, and generally if a buyer, after representations as to values are made, personally visits and inspects the property, he is then presumed to rely upon his own conclusions rather than upon the representations of the agent. (*Miller* v. *Ferguson,* 55 Cal. App. 502 [203 Pac. 772].)

Second: Defendants represented that Lewis A. Shirley was a searcher of titles and performed the work and services customarily performed by abstract companies.

There is no proof in the record that Lewis A. Shirley was not a searcher of records, but if the same were untrue there is no proof of any damage sustained by any such misrepresentations, nor is the materiality of such fact apparent.

Third: Defendants represented that there was a mortgage due the Pacific Coast Joint Stock Land Bank in the sum of three thousand four hundred fifty dollars ($3,450), whereas the fact is the mortgage was more than that sum.

In the written agreement of exchange between the parties, introduced in evidence, it appears that the land in question was "subject to a loan held by the Pacific Coast Joint Stock Land Bank of $2557.21". The written agreement would, of course, represent the understanding by the parties, which appears to be in the correct amount.

Fourth: Defendants represented the property was free and clear of all encumbrances except a mortgage when in fact said property was subject to the following matters of record: (a) was within the boundaries of the Madera Irrigation District, (b) was subject to a right of way for electric transmission line and for county roads, and (c) was subject to the obligations of Reclamation District No. 1664.

In regard to the question of right of way for transmission lines and county roads, Mr. Alberda testified, in answer to the following question: "Mr. Smith told you there was a right of way for the power lines, and about the easement for roads on two sides of the place? A. Yes, sir." In regard to the property being within the boundaries of the Madera Irrigation District, the following question was asked of Mr. Alberda: "Q. They told you about the Madera Irrigation District? A. I do not remember whether they did or not." As to whether the defendants failed to disclose that the property was within the Reclamation District, the following appears: "Q. Was anything said at that time before the time the deal was closed about a reclamation district? A. I do not remember."

■ Fifth: That all of the taxes did not exceed $65 (sixty-five dollars) per year.

In regard to the foregoing representation, the written agreement heretofore referred to contains the following: "Subject to a loan, . . . and taxes not to exceed $350.00." It was stipulated that the taxes chargeable against the property at the time were $291.93. Plaintiffs claim that defendants misrepresented the number of payments due to the Pacific Coast Joint Stock Land Bank, as well as the amount then due. We have already seen that the written agreement correctly sets forth the total amount due the Land Bank, and there is no evidence in the record as to the number of installments unpaid at the time the transaction was made.

Sixth: That there was a good artesian well on the property.

As to an artesian well, Mr. Alberda was asked: "Did you ever see an artesian well? A. No sir. Q. Do you know what one is? A. I could get no idea of it. . . . Q. When you got ready to make the deal you didn't make it because you thought you were getting a place with an artesian well, did you? A. I could not tell you; I never gave it a thought."

Seventh: That the equity in said real property was worth five thousand dollars ($5,000).

An examination of the record does not show that such representation was made. At most it appears that the parties were exchanging certain furnishings for a particular

ranch,—no values were fixed, and apparently no representation as to values made.

We are forced to the conclusion, therefore, that the evidence offered in support of the various allegations of misrepresentation do not sustain the contentions of appellants, and the court was correct in directing a verdict in favor of respondents. The judgment based thereon should, therefore, be affirmed, and it is so ordered.

Plummer, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 7, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1935.