[Civ. No. 6714. Third Dist. June 5, 1942.]

CLIFFORD PALM, Respondent, v. THOMAS M. SMITHER, Appellant.

Thomas M. Smither in pro. per. for Appellant.

Pugh & Pugh for Respondent.

THE COURT.—The defendant has appealed from a judgment which was rendered against him in a suit to cancel a lease with an option to purchase land, on the ground of fraud. The action also sought to quiet title to the land in the plaintiff.

It is contended the findings and judgment are not supported by the evidence; that the court erred in receiving oral evidence of conditions which vary the terms of the written lease, and that alleged misrepresentations on the part of the lessee, with respect to the value of the property, do not constitute a cause for rescinding the lease, in the absence of proof of confidential relationship between the parties.

The plaintiff owns eighty acres of unimproved land in the vicinity of Baird in Shasta County, which he inherited from his father. He was a druggist in Marysville. He only once saw the land in question. It had never been cultivated or used for any purpose. It was situated partly within the area

of the Shasta Dam reservoir site, which is a part of the Central Valleys Project. The plaintiff did not know its value. He supposed it was useless and of small value.

The defendant was an engineer in the employ of the Pacific Gas and Electric Company, at San Francisco. He had in his possession a topographical map of the reservoir property and knew that plaintiff's land was partly within that district. He knew of the accelerated values of lands affected by that enterprise. Shortly after the award of the contract for the construction of Shasta Dam the defendant made numerous trips to Shasta County. Within a few months he procured six leases of other lands within that reservoir district for the asserted purpose of prospecting for gold and other valuable minerals, although no profitable mining enterprises had been conducted in that vicinity. All of these leases included options to purchase the lands.

September 11, 1938, the defendant visited the plaintiff at Marysville and told him he was the president of a mining corporation, called the East Belt Mining Company, which was engaged in gold mining, and that it desired to lease his Shasta County land for the purpose of prospecting for gold and other precious metals. Upon inquiry, he told the plaintiff his land was of little value; that it was assessed for only $400, and that it was not worth more than $800 and that its rental value was not more than $12\frac{1}{2}$ cents per acre per year. He said that if the plaintiff would give it a lease for one year, with an option to buy the land, the company would "start operations immediately, and his intentions were to put a mill on that property." He said that they "would know within a year whether there were any minerals of value upon the property," and that if they found minerals they would buy the property. The plaintiff told the defendant he had no knowledge of the value of the property, but that if Mr. Smither said it was worth only $800 he would take his word for it. Thereupon the defendant produced a form of lease and option to purchase the land, with which he had previously supplied himself. He filled in the blank portions and procured the plaintiff to sign it in his presence. He paid the plaintiff $10 for the lease, and gave him one additional dollar to pay for an acknowledgment of the document. The lease was given to the plaintiff, who returned it to the defendant several days later. It was dated September 11, 1938, and purported to lease the property to "Thomas M. Smither, Lessee" for a term of one year from the date thereof with

"the privilege of renewing this lease for each year thereafter, but not beyond the 11th day of September, 1948," for the purpose of "prospecting for minerals, and such other nonagricultural purposes as said lessee may elect." The consideration mentioned in the lease is 12½ cents per acre. The document then provides that the lessee shall have an option to purchase the land for $800 at any time "before the expiration of the foregoing lease, or any renewal hereof."

When the terms of this lease were read to the plaintiff he asked the defendant why he had named himself as lessee, instead of the East Belt Mining Company, which he had said would operate the mining enterprise. The defendant replied that he intended to immediately assign the lease to that company, and that the mining work would be commenced at once.

Within sixty days after the execution of the lease the plaintiff discovered that his land was partly within the Shasta Dam reservoir district, and on November 26, 1938, advised the defendant by letter of that fact and asked him to cancel the lease, which was refused. Prior to March 2, 1939, the plaintiff was offered $1,200 for the land. On that date he wrote to the defendant, telling him that a member of the United States Reclamation Bureau had offered him that amount for the property, and then told him that if he intended to exercise the option to purchase the land he must do so at once. This letter was not answered.

The East Belt Mining Company was merely a family organization controlled by the defendant. It had failed to pay corporation taxes and was actually defunct at the time the lease was executed. It had never owned property nor was it ever engaged in any mining enterprise. The lease was not assigned to the company. On the contrary, it was recorded in the name of the defendant. Absolutely no prospecting or work of any sort was performed on the premises within the period of a year after the lease was executed, or at all. No mill was ever constructed on the property. No effort to mine the property was ever made by the defendant, or by anyone in his behalf. At the end of the year he attempted to procure a renewal of the lease, which was refused.

After serving the defendant with a notice of rescission of the lease and option, on the grounds of fraud and failure of consideration, this action to cancel the lease and to quiet title to the land was commenced. Findings were adopted favorable

to the plaintiff in every respect. Judgment was thereupon rendered in his favor, canceling the lease, and quieting title in him to the land in question. From that judgment this appeal was perfected.

██ The findings and judgment are sufficiently supported by the evidence. There is one finding, with respect to an allegation of the complaint, to the effect that plaintiff was to receive, as part consideration for the lease, a percentage of the proceeds derived from gold secured from the mining enterprise, as royalties. This finding was adopted by inference. It is not supported by the evidence, but it is harmless. It is not in conflict with the essential findings which support the judgment, and it may therefore be disregarded. All of the findings which are necessary to the support of the judgment are supported by the evidence.

The chief consideration for executing the lease and option to purchase the land, on the part of the plaintiff, was the prospect which it afforded of selling the property. The amount of rent which was paid was comparatively insignificant. As an inducement for executing the lease the plaintiff was assured that if minerals were found in paying quantities, the option to purchase the land would be immediately exercised. The appellant told him that mining operations would be commenced immediately, and that they intended to put in a mill for that purpose. He also said they would know within a year whether there were valuable minerals on the property. The appellant also deceived the plaintiff by asserting that he was the president of the East Belt Mining Company, which was engaged in mining enterprises, and that the lease would be assigned to the company which would immediately commence prospecting the land for minerals. The evidence shows that the plaintiff executed the lease and option to purchase the land in reliance upon those representations. None of these promises were kept. Absolutely no effort to prospect for minerals on the land was made by the appellant, or by the mining company within the year, or at all. In fact, the mining company had never owned any property or engaged in mining enterprises. On the contrary, it was a defunct corporation possessing no legal right to engage in business. Considering all the circumstances of this case, in the light of similar transactions on the part of the appellant, of which there is evidence in the record, the court was warranted in believing that the lease and option to purchase the land was procured by means of said false pretenses; that the appel-

lant never intended to prospect for minerals on the land, but, on the contrary, that he merely tied up the title with this lease for the purpose of speculating on making a profit by selling it at an advanced price on account of the demand for lands incident to the Central Valleys Project and that the lease was tainted with fraud from its inception. Independently of the appellant's false statements regarding the value of the land, other misrepresentations of material facts furnish ample reason for canceling the lease and option on the ground of fraud. Evidently the appellant did not intend to keep the promises which he made to the plaintiff regarding the prospecting of the land for minerals. That was the chief inducement for the plaintiff to execute the lease.

The making of promises regarding material facts, which induce one to execute a contract or alter his position to his detriment, constitutes actual fraud which may justify the rescission of a document procured by such means. (§ 1572, subd. 4, Civ. Code; 12 Cal. Jur. 738, § 22; *Wilson* v. *Rigali & Veselich,* 138 Cal. App. 760 [33 P. (2d) 455]; *Cox* v. *Klatte,* 29 Cal. App. (2d) 150 [84 P. (2d) 290].) It is not necessary that each of the material alleged false statements shall be supported by the evidence to warrant rescission of the instrument. It is sufficient if one or more of such material false statements are supported by the evidence. (*Stewart* v. *Crowley,* 213 Cal. 694 [3 P. (2d) 562]; *Wilson* v. *Rigali & Veselich, supra.*)

It is true that misrepresentations regarding the value of property may not ordinarily furnish ground for rescission of an instrument on the ground of fraud, for the reason that such estimates are usually deemed to be mere expressions of opinion or "trade talk." But when such positive statements of the value of property are made with the purpose of deceiving and defrauding one, and when they are made under circumstances indicating that the defrauded party relies on the knowledge and statement of the speaker and is either persuaded to make no 'independent investigation thereof, or is not situated so that he can reasonably do so, the positive statement of the value of property may become actionable as fraudulent. (*Reton* v. *J. D. Millar Realty Co.,* 132 Cal. App. 708 [23 P. (2d) 419]; *Stumpf* v. *Lawrence,* 4 Cal. App. (2d) 373 [40 P. (2d) 920], 12 Cal. Jur. 749, § 28.)

In the present case the plaintiff lived at a distance from the land and had no reasonable opportunity to investi-

gate the question of its value. He was a druggist at Marysville. The appellant had made frequent trips to Shasta County and he was familiar with the land in question and with land values in that vicinity. He was an engineer in the San Francisco office of the Pacific Gas and Electric Company. He told the plaintiff positively its value was not more than $800. The plaintiff told him he did not know its value, but would rely on the appellant's statement in that regard. Under such circumstances, we are of the opinion the false statement regarding the value of the land may be a proper ground for cancellation of the lease and option. It is not necessary that a confidential relationship shall exist in order to render actionable positive misrepresentations of the value of property, but it is true that such fraud under such circumstances must be proved by clear and convincing evidence. The existence of a confidential relationship merely renders it more probable that the injured party relied on the false statement regarding the value of property. Standing alone, the mere misrepresentation of the value of property is ordinarily not entitled to much weight. But when it is accompanied by other material false representations, such as occurred in the present case, we are of the opinion it is entitled to be considered in support of a judgment rescinding the instrument on the ground of fraud.

The court did not err in receiving oral evidence of the surrounding circumstances under which the lease and option to purchase the property was procured in this suit to cancel the instrument on the ground of fraud. (*Darrow* v. *Houlihan,* 205 Cal. 771 [272 Pac. 1049] ; *Mooney* v. *Cyriacks,* 185 Cal. 70, 81 [195 Pac. 922].) In the Darrow case, *supra,* it is said in that regard:

"The trial court permitted the defendants to introduce parol evidence in support of their separate defense in which it was alleged that the agreement of exchange, in its inception, was tainted with fraud, and that its execution was induced by fraudulent representations. Such evidence was admissible in support of that theory despite the written contract."

In Jones on Evidence, Civil Cases, 3rd ed., p. 660, sec. 435, it is said:

"It may always be shown that a document in question never had any legal existence, and on this ground rests the very important exception to the general rule of exclusion, that duress or fraud in the inception of the contract may be proved, although accompanied by the most solemn formali-

ties. Such proof does not recognize the contract as ever existing as a valid agreement, and is received, from the necessity of the case, to show that that which appears to be a contract is not and never was a contract. If the fraud is clearly proven, one of the essential elements of the contract—consent—is wanting. Thus, it may be proved by parol that any material part of the contract was fraudulently omitted or inserted by the other party . . . or that a part of the contract was not reduced to writing because of the fraud of one of the parties, in which case the whole transaction is open to explanation by parol evidence. For the purpose of proving fraud, verbal statements which are material and fraudulent, although made before or at the same time with the written agreement, may be proved. In such case the rule that prior negotiations are merged in the written agreement does not apply.''

 Moreover, evidence of the challenged oral statements was received without objection on the part of the appellant. The objection to that evidence was thereby waived. One may not complain of the admission of such oral statements for the first time, on appeal. (*Caine* v. *Polkinghorn,* 54 Cal. App. 387 [201 Pac. 936] ; *Bonner* v. *Finney,* 110 Cal. App. 518 [294 Pac. 466] ; *Nunez* v. *Morgan,* 77 Cal. 427 [19 Pac. 753] ; *Tebbs* v. *Weatherwax,* 23 Cal. 58; *Inner Shoe Tire Co.* v. *Tondro,* 83 Cal. App. 689 [257 Pac. 211] ; 92 A.L.R. 812, note; 2 Cal. Jur. 267, § 84.)

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied August 3, 1942.