[Civ. No. 6726. Third Dist. July 30, 1942.]

BENTON A. GRAHAM, as Administrator, etc., et al., Respondents, v. THOMAS M. SMITHER, Appellant.

Thomas M. Smither in pro. per. for Appellant.

Carr & Kennedy for Respondents.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against him in a suit cancelling a lease and option to purchase land on the ground of failure of consideration and that it was procured by means of fraud.

Zeph D. Graham and his brother Victor owned equal undivided interests in sixty-seven acres of unimproved land within the area of the Central Valleys Project in Shasta County. Victor died in 1933, possessed of that interest in the land in question. He left surviving him several heirs. An administrator of his estate was not appointed until March 13, 1939.

Zeph D. Graham was 67 years of age. He lived at Redding, where he was engaged in teaching music. He had formerly engaged in some placer mining, including a little unsuccessful prospecting on the land in question. The defendant claimed to be a mining engineer who was employed in the land department of the Pacific· Gas and Electric Company at San Francisco. About the time the first contract on the Shasta Dam Project was awarded, this appellant made numerous trips to Shasta County and interested himself in procuring from owners of land within that area at least five or six similar leases for nominal rental with accompanying options to purchase the lands. Another one of these leases, to which reference is made by the appellant in this record, was cancelled by the trial court on the ground of fraud and

failure of consideration. On appeal that judgment was affirmed. (*Palm* v. *Smither,* 52 Cal. App. (2d) 500 [126 P. (2d) 428].) It seems apparent that the appellant procured the lease in the present case, as he evidently did in the Palm case, to tie up the title with an accompanying option to purchase the land, with the purpose of speculating on the probability of selling it for a greatly increased price to the United States Bureau of Reclamation for use in the dam project, and that he fraudulently represented that he was president of a mining company, and that he intended to prospect the land in good faith for gold or other valuable minerals.

The owners of the land were not formerly acquainted with the appellant. On August 27, 1938, Mr. Smither went to Redding and interviewed Zeph Graham, representing himself to be a mining man and president of the East Belt Mining Company. He said, ''I would like to get permission to prospect for gold and minerals [on your land]. . . . We will go in and put down holes all over the place, prospect holes all over the place.'' He produced a proposed lease and option which he had previously prepared. He first tried to obtain the lease for $2\frac{1}{2}$ cents per acre per year with the privilege of renewing the lease each year for a period of ten years. He offered to insert an option to purchase it during the term of the lease for the sum of $340. The evident inference, derived from the terms of the lease and from the oral conversation, was that the mining corporation would promptly prospect the premises and if it discovered gold or other valuable minerals in paying quantity, the option to purchase the land would be at once exercised. When the appellant subsequently saw Benton Graham, the brother of Zeph, to secure his signature to the lease, he told him, ''I am going to start operations to prospect . . . *right soon.*''

Zeph refused to agree to the offered rental or to the purchase price. He said they orally agreed to an annual rental of 25 cents per acre per year, and to a purchase price of $1,000. The appellant deceived him by pretending to write in the lease the agreed amount of rental of 25 cents per acre. Instead of that sum he inserted in the lease the sum of $2\frac{1}{2}$ cents per acre. Zeph signed the lease with that understanding without reading it, and with the agreement that the appellant would procure the signatures of all of the other heirs of Victor Graham, deceased, who, he was then told, was dead. The agreed rental was an insignificant sum. A check

for $2 in payment of rent was all that the appellant ever sent to the lessors. Zeph testified that the only consideration for signing the lease was his expectation that the prospecting would be promptly prosecuted so that if minerals were discovered in paying quantity the option to purchase the land for the sum of $1,000 would be exercised at once.

The appellant did subsequently secure the signatures of three other heirs of Victor Graham, deceased. The signatures of the three remaining heirs were never obtained. The lease was promptly recorded so as to create a cloud on the title to the land. There is a conflict of evidence regarding the activity in prosecuting the prospecting enterprise, but Zeph testified that no prospecting was ever performed by the appellant during the first year of the lease, or at all. The lessee did testify that he went over the land in May, 1939, and took some specimens of soil, but that they didn't look good to him, and he never had them assayed. He admitted that he neither sank shafts nor dug holes in the process of prospecting.

At the expiration of the first year of the lease the appellant attempted to renew the agreement on the same terms contained in the written document, which was promptly refused. In the meantime, Zeph had a bona fide offer of $3,200 for the land from the United States Bureau of Reclamation for use in the Shasta Dam Project. Notice of rescission of the lease and option was served on the appellant in September, 1939, on the grounds of fraud and failure of consideration, specifying the deceit and failure previously mentioned This suit for cancellation of the lease and to quiet title to the land was then commenced. The court adopted findings favorable to the plaintiffs in every material respect. It was determined that the defendant was guilty of fraud from the inception in procuring the lease, and that he had no intention of prospecting the land for valuable minerals. A decree of court was accordingly rendered, cancelling the lease for fraud and failure of consideration, and quieting title thereto in the plaintiffs.

The findings and judgment are adequately supported by the evidence. All of the necessary elements of fraud, sufficient to warrant the cancellation of the lease and option, are shown by the record. With full knowledge of the fact that the land is situated within the Central Valleys Water Project, and that it would be greatly enhanced in value on

that account, the appellant failed to disclose that fact to the lessors; he deliberately deceived them by representing that he was a mining man and president of the East Belt Mining Company, which was then a defunct corporation whose charter had been forfeited for failure to pay corporation taxes; he fraudulently represented to the lessors that he or the mining company would promptly sink shafts, dig holes "all over the property" and conduct prospecting investigation for gold and other valuable minerals at once, and that if the minerals were discovered in paying quantity the option to purchase the land for the sum of $1,000 would be exercised. That was the sole object of the lessors in making the lease. Mr. Zeph Graham so testified. The record satisfactorily shows that the appellant never intended to prospect for minerals. Evidently his only purpose was to tie up the title and hold it for speculation, believing the Shasta Dam Project would result in greatly increasing its value. The appellant failed to prospect the land in good faith. According to his own testimony, his taking of specimens on one occasion in May, 1939, just before the term of the lease was about to expire, was a mere sham and pretense. He never even had those specimens assayed. He fraudulently inserted in the lease, which he had previously prepared for the occasion, the rental sum of 2½ cents per acre instead of 25 cents per acre, as the parties agreed, and he failed to secure the signatures of all of the heirs of Victor Graham, deceased, as he promised to do. There was no real effort on the part of the lessee to perform the most important provision of the lease, that of prospecting for minerals, at any time within the term of that contract. The lease merely extended for one year with the privilege of renewal. Even though the time for performance was not specifically stated in the lease, it was understood that operations would be commenced promptly, or at least within a reasonable time. It is unreasonable to assume the lessee was not required to commence prospecting during the entire term of the instrument, or that he was entitled to a renewal of the contract in spite of the fact that he made no real effort to perform the work which was the inducing cause of the execution of the lease by the owners of the property.

For the foregoing reasons, we are satisfied the evidence supports the findings and judgment, and that the court was warranted in quieting title to the property in plaintiffs.

 The making of promises regarding material facts, which induces one to execute a lease or contract, or to alter his position to his detriment, constitutes actual fraud which will justify the rescission of the document. (§ 1572, subd. 4, Civ. Code; 12 Cal. Jur. 738, § 22; *Palm* v. *Smither,* 52 Cal. App. (2d) 500 [126 P. (2d) 428]; *Wilson* v. *Rigali & Veselich,* 138 Cal. App. 760 [33 P. (2d) 455]; *Cox* v. *Klatte,* 29 Cal. App. (2d) 150 [84 P. (2d) 290].)

 It is not necessary that each of the false statements shall be supported by the evidence. It is sufficient to warrant a rescission of the instrument if a single material statement is fraudulently made, provided that statement was relied upon and became an inducing reason for the execution of the instrument. (*Stewart* v. *Crowley,* 213 Cal 694 [3 P. (2d) 562]; *Wilson* v. *Rigali & Veselich, supra.*)

 The court did not err in receiving oral evidence of the circumstances surrounding the making of the lease and option in question. That testimony was competent in support of the allegation of fraud relied upon by the plaintiffs as a ground for cancelling the instrument. (*Darrow* v. *Houlihan,* 205 Cal. 771 [272 Pac. 1049]; *Mooney* v. *Cyriacks,* 185 Cal. 70, 81 [195 Pac. 922]; Jones on Evidence, Civil Cases, 3rd ed., p. 660, § 435.) Moreover, the appellant waived his right to challenge the oral evidence by failing to object to it at the trial. It is too late to object to evidence for the first time on appeal. (*Howard* v. *Adams,* 16 Cal. (2d) 253, 257 [105 P. (2d) 971, 130 A. L. R. 1003]; *Palm* v. *Smither, supra.*)

The judgment is affirmed.

Adams, P. J., concurred.