[Civ. No. 20240. Second Dist., Div. One. Nov. 3, 1954.]

RUTH L. KAHN, Respondent, v. HYMAN LISCHNER, Appellant.

Zimmerman, Kelley & Thody and W. Alan Thody for Appellant

Bodle & Landye and Louis R. Stein for Respondent.

MOSK, J. pro tem.*—Alleging that the failure, due to bad faith, of appellant to perform under a written agreement for the sale and conveyance of real property, respondent brought an action in the Superior Court of Los Angeles County for damages for breach of contract and was awarded judgment in the sum of $5,000 and interest. This appeal has been brought on the grounds of insufficiency of the evidence and errors in law.

Negotiations for the purchase and sale of the timberland involved in this lawsuit took place both by correspondence and telephone, and over a somewhat protracted period, since respondent resides in Portland, Oregon, the appellant in Los Angeles, and the real property is located in Humboldt County. The parties never met.

On December 29, 1950, respondent sent a letter to appellant inquiring whether the property was for sale. On January

*Assigned by Chairman of Judicial Council.

2, 1951, appellant replied that he was interested in selling and asked about the fair market value. Under date of January 9, respondent wrote that it was difficult to make an offer without legal description of the property and asked for the legal description and the annual taxes. On February 7, appellant provided the legal description and assessed valuation of the property. Six days later respondent wrote that: "I hesitate to place a value on someone else's property, but can tell you I have been offered a similar tract of property for $2,000. Since your property is closer to mine, I would prefer to buy yours," and offered a four-year term contract at a total price of $2,500. On March 3, 1951, appellant telephoned to respondent in Portland for further discussion, pursuant to which a price of $2,750 on terms was agreed. Thereupon respondent mailed an earnest money receipt in duplicate, accompanied by a check in the sum of $100, an endorsement on which read "Earnest money payment on purchase of 160 acres in Humboldt County: S ¼ NW ¼ and NW ¼ of Sec. 22, Twp. 7 N R 4 E; balance $2650.00 as per agreement."

Upon arrival of the instruments, another telephone conversation followed in which the parties agreed upon a price of $2,500 cash, instead of the higher sum on terms. Appellant thereupon made appropriate changes in the receipt, and returned it to respondent with a notation requesting that she "Return this copy immediately with your initials to the corrections you outlined." Respondent initialed most of the changes, but neglected to do so to every minute alteration.

There is a conflict in the testimony regarding how promptly respondent initialed and returned to appellant the corrected receipt. The trial court apparently believed this was done with due dispatch. Appellant asks us to acccept his version and to reject that of respondent, but this we cannot do on appeal. (*Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 183 [195 P.2d 427].) ■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (*Evje* v. *City Title Ins. Co.*, 120 Cal.App.2d 488, 492 [261 P.2d 279].) Neither is indicated in the instant case.

Appellant contends that respondent failed to comply with the further notation on the earnest money receipt requiring it "To be placed with the 'Title' Co. . . . ." ■ Whether

or not respondent substantially complied when she deposited with the title company $2,400 representing the balance of the purchase price, together with description of the property and identification of the seller, is a question of fact. We see no reason to disturb the conclusion of the trial court in that regard. Whether there was a subsequent failure of the title company to act expeditiously, if so whether it is to be attributed to the buyer, or to neither party, or whether it justified appellant's failure to make any further inquiry concerning the status of the transaction are also factual questions, with the apparent resolution of which by the trial court we see no reason to interfere.

Subsequently the escrow company, located in Eureka, contacted appellant relative to the delay in completing the deal, and, so it reported, was informed appellant had received no deposit on the transaction. Thereupon, pursuant to instructions from respondent, a second $100 check was tendered, this one by the company. Accompanying the check was a letter stating that "The Twenty-four hundred dollars balance of purchase price has been on deposit with us since April 6, 1951. We are enclosing the above check for one hundred dollars to replace the original check as the same was either mislaid or lost." Appellant insists tender of a second check constituted an admission by respondent that a second deposit was required pursuant to the terms of the revised agreement and that the original check was no longer effective consideration. However, like the trial court, we see no reason to doubt the statement in the letter of transmittal that respondent was merely replacing a deposit which she reasonably believed appellant had mislaid or lost.

Thereafter appellant made a trip to Eureka on March 22, 1951, and readily learned upon the most superficial inquiry that the property was worth more than $2,500. He solicited a purchase by a lumber company, the Tacoma Lumber Sales, Inc., and on May 31, 1951, a sale for $7,500 to the company was recorded. The trial court found that appellant "did wilfully and in bad faith sell said land to Tacoma Lumber Sales in order to obtain a substantially higher price."

Appellant insists that under all of the foregoing circumstances, there was no unqualified acceptance of an offer, and consequently no enforceable contract with respondent was executed. █ It is fundamental that an offer imposes no obligation until it is accepted according to its terms. (*Lawrence*

*Block Co.* v. *Palston,* 123 Cal.App.2d 300, 310 [266 P.2d 856].)

■ A mere qualified acceptance of an offer constitutes a rejection of the original offer and puts an end to it; it is in effect a new proposal. (Civ. Code, § 1585.) ■ An acceptance, to result in the formation of a binding contract, must meet exactly and precisely the terms proposed in the offer; and if something different is made a condition of the alleged acceptance there is no meeting of the minds and no contract arises, unless the original offeror accepts the counteroffer. (*Lawrence Block Co.* v. *Palston, supra; Ajax Holding Co.* v. *Heinsbergen,* 64 Cal.App.2d 665 [149 P.2d 189].)

■ On the other hand, the terms of a contract need not be stated in the minutest detail. The requisite to enforceability is that there be a meeting of the minds upon the essential features of the agreement. (*Lawrence Block Co.* v. *Palston, supra.*) We cannot hold that the minor and apparently inadvertent omissions in initialing the receipt by respondent in any way altered the essential elements of an instrument that with reasonable clarity reflected a meeting of the minds of the parties. There was an unequivocal acceptance of a counterproposal.

■ Appellant insists that the earnest money receipt was unsupported by consideration, in that the original check for $100 was offered at a time when the agreement called for a purchase price of $2,750 on terms, and the endorsement thereon so indicated. However the testimony reveals that when appellant returned the receipt with changes reflecting the revised agreement, he did not return respondent's check, and in fact he retained it at all times up to the trial. There is a conflict in the testimony as to whether appellant requested a new check of respondent, but in the view of the otherwise inexplicable retention of the original check we would conclude, as did the trial court, that the parties understood the check in appellant's hands to be consideration for the revised agreement. ■ One consideration may support several promises. (Williston on Contracts, § 137A; *First Nat. Bank* v. *Pomona Tile Mfg. Co.,* 82 Cal.App.2d 592, 603 [186 P.2d 693].) ■ A promise founded partly on past consideration and partly on executory consideration is enforceable. (*W. T. Rawleigh Co.* v. *Miller,* 105 Mont. 456 [73 P.2d 552, 554]; 17 C.J.S. 472.) ■ Even though the agreement for which the check had originally been given was superseded by the revised understanding of the parties, a restoration of contract rights which have been lost or ex-

pired or superseded may constitute the consideration for a new promise. (*Hedstrom* v. *Schaumann,* 174 Wis. 354 [183 N.W. 968] ; 17 C.J.S. 430.)

We conclude that a contract was duly executed. Even so, next maintains appellant, he was induced to enter into the agreement by respondent's fraudulent misrepresentation that the property was worth only $2,000, whereas the fair market value, unknown to appellant, was considerably more. It is well established that a person who has been induced by fraudulent misrepresentations to enter into a contract may refuse to perform, or if he has performed when the misrepresentations are discovered, he may rescind. A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon. (Restatement, Torts, §§ 526, 531.)

 Ordinarily misrepresentations regarding the value of property may not furnish ground for avoidance of a contract to sell for the reason that such estimates are usually deemed to be mere expressions of opinion. (*Craig* v. *Wade,* 159 Cal. 172 [112 P. 891].) This is particularly so when an opportunity is present to ascertain the real value. (*Alberda* v. *Smith,* 2 Cal.App.2d 74, 79 [37 P.2d 509].)

There is a plethora of cases in which owners have misled prospective purchasers as to value in order to induce the latter to buy. But cases are rare indeed, and appellant has cited none, where an owner complains that he was deceived as to the value of his own property by a designing purchaser. This may be because the law generally assumes one will have some knowledge of the value of that which he owns. Thus an owner always may testify as to value, even though shown to be relatively unfamiliar with his own property and even though experts have testified to widely varying valuations. (10 Cal.Jur. p. 1023; *People* v. *La Maccchia,* 41 Cal.2d 738, 753 [264 P.2d 15] ; *Hood* v. *Bekins Van & Storage Co.,* 178 Cal. 150, 152 [172 P. 594].)

One case in which an owner sued to cancel a lease because of fraud by the lessee is *Palm* v. *Smither,* 52 Cal.App.2d 500 [126 P.2d 428]. The factual situation superficially is comparable to the instant case in that the owner resided at a distance from the property, and he inquired about the value from a prospective lessee who had approached him about the transaction. Said the court (at p. 505) : ". . . when such positive statements of the value of property are made with

the purpose of deceiving and defrauding one, and when they are made under circumstances indicating that the defrauded party relies on the knowledge and statement of the speaker and is either persuaded to make no independent investigation thereof, or is not situated so that he can reasonably do so, the positive statement of the value of property may become actionable as fraudulent.'' However, the court continued (on p. 506), ''Standing alone, the mere misrepresentation of the value of property is ordinarily not entitled to much weight,'' but in that case it was found to be ''accompanied by other material false representations.'' A statement of value may become a basis for fraud claims only if coupled with other facts, circumstances or false representations. (*Stumpf* v. *Lawrence*, 4 Cal.App.2d 373 [40 P.2d 920].)

 Precisely what false representation was made in the instant case? Under date of February 13, 1951, respondent, who had entered into other real property transactions in the area, wrote to appellant, in response to the latter's request for information, that ''as I told you, I hesitate to place a value on someone else's property, but can tell you I have been offered a similar tract of property for $2,000.'' The first portion of the statement indicates a reluctance to evaluate, rather than any assertion of worth. Certainly this is not comparable to the unequivocal statement in *Reton* v. *J. D. Millar Realty Co.*, 132 Cal.App. 708, 712 [23 P.2d 419]. The second phrase, while undoubtedly meant to suggest value to appellant, related to another parcel of land. As stated in *Reclamation Dist. No. 730* v. *Inglin*, 31 Cal.App. 495, at 499 [160 P. 1098], ''. . . the prices at which other lands of like quality and adaptation and similarly situated may have been sold cannot reasonably be accepted as a just criterion for measuring and, finally, ascertaining the actual value of the land sought . . .''

 At the trial respondent identified the other property, and there was no evidence to indicate the purported price of $2,000 was inaccurate. It was, therefore, not a false representation, but a true representation. The evidence in this case amply supports the conclusion of the trial court that no false representations were made and no fraud was perpetrated upon the appellant.

In addition appellant reveals in his own inquiry, dated January 2, 1951, a suggestion that he knew the value of the property was on the ascendency. He wrote, ''we are not familiar with its present valuation except that the taxes for

the same have increased considerably.'' Whether that element, of which he indicated awareness, should have induced this appellant as a property owner to make further inquiry concerning the economic factors causing higher tax evaluation, is a question that may have been taken into consideration by the trier of fact.

It is true that a victim in a fraud action is not necessarily held to the standard of precaution or of minimum knowledge of a hypothetically reasonable man. The law under appropriate circumstances will protect the gullible and the ignorant from those who would take advantage of them, even where persons of normal intelligence would not have been misled. ''No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.'' (*Chamberlin* v. *Fuller*, 59 Vt. 247 [9 A. 832, 835].) However each case must be considered on its own facts (*Anderson* v. *Board of Medical Examiners*, 117 Cal.App. 113 [3 P.2d 344]), there being no fixed standard by which courts may universally measure the conduct of parties engaged in commercial intercourse. Thus if the conduct of the complaining party in the light of his own intelligence and information, or ready availability of information, was manifestly unreasonable, he will be denied a recovery. The test is not only whether the party acted in reliance upon a misrepresntation, but whether he was justified in his reliance. (*Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291].)

As a professional man appellant possessed a standard of intelligence suggesting that some investigation before selling his property would not be an unreasonable requirement. While the property was located in Humboldt County, a considerable distance from Los Angeles, it was also many miles from the Portland, Oregon, residence of the proposed purchaser upon whom appellant purported to rely. That appellant was able to ascertain the value upon perfunctory inquiry after this transaction was negotiated only serves to emphasize the ease with which the information could have been acquired previously. As stated in *Strait* v. *Wilkins*, 16 Cal.App. 188, 191 [116 P. 685] : ''It was never intended to establish a rule that where parties have an equal opportunity to determine value, that one might neglect the opportunity and, if subsequently to his interest, avoid a contract merely because an inflated value was fixed by the other party to the exchange. To apply such rules generally in the ordinary affairs of life, when opportunity exists to ascertain the truth, would be to

encourage rather than to prevent or punish fraud." So, too, in *Konda* v. *Fay*, 22 Cal.App. 722, 726 [136 P. 514], the court found one "should not be permitted to blindly rely upon statements of interested parties when means of correct information was at hand."

The trial court was justified in finding that appellant terminated his contract with respondent because he had made a bad bargain and saw an opportunity to make a better deal. ▆▆ The law is also clear that a transaction will not be deemed fraudulent because the party complaining made a bad bargain (*Jones* v. *Re-Mine Oil Co.*, 47 Cal.App.2d 832 [119 P.2d 219]), nor is mere inadequacy of price, however gross, in itself sufficient ground for avoiding contractual obligations. (*Sargent* v. *Shumaker*, 193 Cal. 122, 129 [223 P. 464].)

Finally, appellant complains of the finding that he "in bad faith" refused to consummate the transaction. This finding was proper under the circumstances. ▆ Failure to convey property without any just reason or excuse is bad faith within the meaning of Civil Code, section 3306. (*Clark* v. *Yocum*, 116 Cal. 515 [48 P. 498].) ▆ "Bad Faith" as used in that section does not require a showing of fraud. (*Pixley* v. *First Federal Sav. & Loan Assn.*, 110 Cal.App.2d 427, 432 [243 P.2d 100].) Bad faith is shown where there is a deliberate refusal to perform (*Nelson* v. *Fernando Nelson & Sons*, 5 Cal.2d 511, 518 [55 P.2d 859]) or without just cause or excuse a declination to perform. (*Engasser* v. *Jones*, 88 Cal.App.2d 171, 177 [198 P.2d 546].)

▆ Bad faith of appellant having been found by the trial court, it was proper to assess damages pursuant to Civil Code, section 3306, "the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, . . ." The court found the agreed price to be $2,500 and the value at the time of the breach to be $7,500. The difference between the two figures is $5,000, the amount of the judgment. The evidence amply supports those findings.

The judgment is affirmed; the purported appeal from the motion denying a new trial is dismissed.

Doran, Acting P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1954. Schauer, J., was of the opinion that the petition should be granted.