[Civ. No. 9067.   Third Dist.   May 29, 1957.]

MORRIS K. COHEN, as Executor, etc., Appellant, v. DAVIS CREEK LUMBER COMPANY (a Corporation) et al., Defendants; MELVIN E. JEPSON et al., Respondents, and consolidated case.

Carr & Kennedy and Shapro & Rothschild for Appellant.

Carlton & Shadwell and Chenoweth & Leininger for Respondents.

WARNE, J. pro tem.*—Two actions are involved in this appeal, numbered 14318 and 14319 in the court below. They were consolidated for trial, and findings of the trial court in both actions are in a single set of findings of fact and conclusions of law, upon which a single judgment in both actions was entered.

Action Number 14318 is an action by the estate of Frank S. Cohen, the holder of a promissory note in the principal sum of $35,000 issued by the defendant Davis Creek Lumber Company to Cohen at the time of its incorporation. In addition to the allegations setting up the note, the complaint alleges that the assets of the corporation were fraudulently conveyed to John Fossett; that the conveyance was accomplished by an agreement between Fossett and Zamboni, president, and James Castelli, vice-president, respectively, of said corporation; that these named defendants agreed to a plan whereby Fossett would acquire the debts of the corporation, file suit thereon and acquire the assets of the corporation at a judicial sale at less than the fair market value and without paying the note sued upon herein; that, pursuant to the agreement, the claims of creditors were obtained, suit was brought and judgment against Davis Creek Lumber Company was obtained; that thereafter the assets of said corporation were obtained at a judicial sale; and that thereafter said assets were transferred by Fossett to a partnership composed of Fossett, Zamboni and Castelli. It was alleged that the action of the defendants was a fraud on the creditors, including Frank Cohen. Relief was sought against Zamboni, Castelli and Fossett, individually and as partners, for a decree setting

*Assigned by Chairman of Judicial Council.

aside, cancelling and annulling the transfers made, adjudging that Davis Creek Lumber Company is entitled to the property, for an order requiring the defendants to retransfer the property to said corporation and for recovery on the note.

Action Number 14319 is a stockholders' representative suit brought by the estate of Frank S. Cohen as the owner of Cohen's one-half interest in the corporate stock, seeking to set aside the alleged fraudulent conveyance above referred to.

Zamboni Lumber Company, though not named in the complaint, was also made a party to both actions by stipulation.

Defendant Fossett having died after suit was filed, his executors were substituted as defendants in the action.

Judgment was rendered in favor of all defendants, except Davis Creek Lumber Company, and as to that defendant judgment was in favor of plaintiff on the $35,000 note only.

Plaintiff appeals in each case from that part of the judgment which was against him.

Cohen, Zamboni and Castelli organized the Davis Creek Lumber Company in December of 1942. Zamboni became president, Castelli, vice-president, and Cohen, secretary-treasurer. Cohen received one-half of the stock, Zamboni and Castelli, one-quarter each. The stock was issued in the amount of $10,000. The total capital contributed to the corporation was $120,000. Cohen's contribution was an equity in a lumber mill, which for the purpose of the capital account was deemed to be an investment of $60,000. Zamboni and Castelli each contributed $30,000. The mill was subject to a chattel mortgage with Morris Plan Company, which the corporation agreed to pay. At the time the corporation was organized it gave promissory notes to its stockholders in the amount of their capital contributions. Cohen's note, which is the basis of action Number 14318, represents the balance due from the corporation to Cohen for his share of the capital contribution to the corporation.

In May, 1943, operation of the mill was started, and the corporation soon thereafter encountered financial difficulties. Additional advances were made by the trio, most of which were made by Zamboni and Castelli. The financial condition of the company rapidly grew worse. Refinancing was required. A meeting of the board of directors was held, and various plans of reorganization were discussed but not agreed upon. Zamboni then made efforts to refinance or sell the mill by contacting various persons to lend or buy, with no

success. Fossett was one of the persons contacted, but at first he was not interested in the deal.

In November of 1943 Cohen wrote to Ira Shadwell, an attorney, to represent him in a sale of his interest to one Hutcheon. This deal never materialized. Conditons did not improve, and a financial crisis was rapidly approaching. On December 15, 1943, a meeting of the shareholders was held. Morris Cohen represented his father, who was ill. At this time various plans were suggested.

One proposition was that Cohen surrender his interest in the mill: (1) if refinanced, in consideration of 10 per cent of the profit; or, (2) if liquidated, for a dividend in proportion to his contribution. Zamboni and Castelli were willing to surrender their interest to Cohen on the same basis.

Later, by letter, Shadwell notified Cohen that "it appears that Zamboni and Castelli can effect a refinancing program after your block of stock is placed in trust." This letter referred to the plan, whereby Cohen was to receive 10 per cent of the net profits. An attorney named Axelrod answered for Cohen and suggested that if nothing else could be worked out, relief was available under chapter 10 of the Bankruptcy Act. Apparently, Shadwell did not approve of bankruptcy proceedings as a means of adjusting the affairs of the corporation, for in his reply to Axelrod he again talked of reorganization. This letter also indicates that the matter was urgent as the financial affairs of the corporation were rapidly coming to a crisis.

In January, the Morris Plan Company was pressing for payment and threatening suit. An action was filed to foreclose a logger's lien. A claim of lien on the mill for an unpaid balance of $5,212.42, for electrical machinery and wiring, was recorded. The corporation's indebtedness was in excess of $100,000 and suits had been brought and others threatened.

Apparently, after all efforts on the part of Zamboni and Castelli had failed, the Bank of America, an unsecured creditor of the corporation, through Mr. Matthews, one of its branch managers, interested Fossett in a plan whereby he was to take over the corporation's unsecured note to the bank, and the bank was to furnish him the money necessary to acquire the chattel mortgage on the mill from the Morris Plan Company. This plan was agreed to by Fossett in the latter part of December, 1943. Fossett thereafter gave notice that he had acquired the corporation's note payable to the

Bank of America and would sue. There is testimony to the effect that as part of the plan Fossett would give Zamboni and Castelli a contract to purchase the mill. Fossett then acquired certain of the outstanding debts, including a note payable to Morris Plan Company, secured by chattel mortgage, upon the essential equipment of the sawmill. On January 27, 1944, he sued Davis Creek Lumber Company on this note. Zamboni, as president of the company, was served with summons the same day. On January 27, 1944, Davis Creek Lumber Company answered by general denial, and it was stipulated that the case be tried on that date. The company had no defense to the suit. Judgment was for plaintiff in the principal sum of $23,600 with $100 attorneys' fees. Foreclosure of the mortgage was decreed. At execution sale the mill and equipment were sold to Fossett for $24,000. In suits upon the unsecured debts a writ of attachment was levied on the remainder of the assets of Davis Creek Lumber Company, and these assets were sold to Fossett at execution sale. Cohen was not informed of these suits though he was informed of the execution sale.

Davis Creek Lumber Company did not own the millsite property but had an option to purchase it for $6,000. It had paid $750 on account. It was to be paid for in four equal installments. An agreement was to be drawn covering the deal, but this was never done. On January 15, 1944, $1,750 was due on this option. The owner, knowing that the payment would not be made, sold the property to Fossett. This deal was consummated prior to the time Fossett foreclosed the chattel mortgage on the mill. The purchase of the millsite property was a condition of the Bank of America loan to Fossett.

Following the levies above mentioned, Zamboni and Castelli received $1,133.25 from Diamond Match Company and $1,500 from the Pacific Gas and Electric Company, which were the remaining assets of Davis Creek Lumber Company and applied said sums as a set off against their own claims against the corporation. They also ''pocketed'' $36 remaining in the company's bank account.

In April, 1945, a contract was signed between Fossett and Castelli and Zamboni whereby Fossett agreed to sell the mill to Zamboni and Castelli. Negotiation on this contract commenced no later than February 20, 1944. Under the contract Zamboni and Castelli were to run the mill. Fossett would advance any necessary funds. Fossett was to get any lumber

cut at market price, and once he was repaid for all his advances plus a bonus, the mill was to belong to Zamboni and Castelli. This method of operation was Fossett's own idea. He had discussed the matter with Zamboni in January of 1944. The operation of the mill was financially successful. Later Zamboni acquired Castelli's interest in the mill.

Frank Cohen died insolvent in 1944, and in 1947, shortly before the statute of limitations had run, Morris Cohen, as executor of the estate of Frank Cohen, deceased, brought this suit. Fossett died after the suit was commenced, and his executors were substituted for him.

The court found Fossett, Zamboni and Castelli were not and never had been partners; that Zamboni and Castelli were partners; that no relationship ever existed between either of them and Fossett, other than that of seller and buyer, respectively, of certain assets involved in this action, and that said parties dealt at arms' length in all their transactions; that at the time of the death of Frank S. Cohen, and for more than one year prior thereto, the directors and officers of the Davis Creek Lumber Company were the defendant Zamboni, defendant Castelli and said Frank S. Cohen, and that Zamboni was president and acted as general manager.

There is a finding that Zamboni, Castelli and Fossett did not enter into a conspiracy to fraudulently acquire for themselves all of the assets of the Davis Creek Lumber Company. The court also found that Fossett acquired the claims of certain creditors of the Davis Creek Lumber Company and commenced legal actions thereon, reduced the same to judgments and then acquired some of the assets of said company at execution sales levied on such judgments and other assets, including the mill at foreclosure sale; that said acts and conduct of Fossett were not in pursuance of any conspiracy whatever, but were done in good faith and without any fraud or fraudulent intent whatever; that all of the assets purchased by Fossett at such execution sales and foreclosure sale were purchased at the fair market value of the same; that before the said foreclosure and execution sales were made Frank S. Cohen was fully informed thereof.

There is also a finding that at the time of the acquiring of the claims of certain of the creditors of Davis Creek Lumber Company and the filing of the suits thereon, said company was insolvent, and that at the time of his death Frank S. Cohen was insolvent, and that his estate was and is insolvent.

The court also found as follows: That at the time Fossett

acquired the creditors' claims of Davis Creek Lumber Company and prior to the execution sales and foreclosure sales, Fossett agreed with the general creditors that he would pay all the creditors, except the claims of the stockholders of the company; that it was for the best interests of the company and its stockholders and directors that Fossett acquired the assets thereof; that the stockholders of Davis Creek Lumber Company had guaranteed and were personally responsible for certain of the obligations and debts of the Davis Creek Lumber Company; that the corporate rights, powers and privileges of said corporation had been suspended by reason of its failure to cause to be paid to the State of California certain franchise taxes due from said corporation; and that said failure was the result of its insolvency.

There is no merit in appellant's contention that the trial court ignored the theory of constructive trust upon which he claims the case was primarily tried. He implies that the court made no finding on the issue of constructive fraud, that is, whether Zamboni and Castelli had been guilty of a breach of trust as directors.

As stated, the court found that neither Zamboni nor Castelli did any acts in derogation of their duties as directors of the Davis Creek Lumber Company, nor did either do any act for the purpose of acquiring the assets of the company or for the purpose of eliminating Frank S. Cohen as a stockholder. In this connection the court found that Zamboni and Castelli made every effort possible to obtain a favorable sale of the assets of the Davis Creek Lumber Company, so that the creditors thereof could be paid and the credit standing of the officers and stockholders thereof protected. There is substantial evidence to sustain the finding, and we feel that it is inclusive of constructive as well as actual fraud. We fail to see wherein either Zamboni or Castelli abused the fiduciary relationship of confidence reposed in them as directors of the corporation. There is evidence in the record that the corporation was insolvent, and Zamboni and Castelli had exhausted their credit; that Frank S. Cohen declared he had no money and could do nothing; and that Zamboni and Castelli were in no position to stop Fossett from buying up the mill at the foreclosure sale or purchasing the remaining property at the execution sales, even if they had so desired. If at any stage of the proceedings a presumption of fraud arose by reason of the fiduciary relation which existed because of Castelli and Zamboni being directors of the corporation,

that presumption has been overcome by evidence and the court's finding. There is ample evidence in the record to show that this is not a case of Castelli and Zamboni, as directors, manipulating the affairs of the corporation so as to secure personal gain. No partnership, at any time, existed between Castelli and Zamboni and Fossett, and when Castelli, a year or so later, again acquired the mill it was by bona fide purchase from Fossett under a conditional sales contract. They dealt at arms' length with Fossett and paid him his price for the mill. They cannot, in the light of the facts, be charged with constructive fraud in so doing.

An action in which fraud is involved must be considered on its own facts. (*Kahn* v. *Lischner,* 128 Cal.App.2d 480, 489 [275 P.2d 539] ; *Anderson* v. *Medical Examiners,* 117 Cal. App. 113 [3 P.2d 344] ; *Estate of Arbuckle,* 98 Cal.App.2d 562 [220 P.2d 950, 23 A.L.R.2d 372].) For that reason we have not discussed the many cases cited by appellant in his briefs.

Respondents' claim that Cohen had no right to sue in the derivative action is well taken, since the corporate powers, rights and privileges of Davis Creek Lumber Company were suspended for failure to pay certain franchise taxes due the State of California on March 15, 1945. In *Smith* v. *Lewis,* 211 Cal. 294, 298 [295 P. 37], the court held:

". . . And a stockholder suing on behalf of the corporation, . . ., has no greater right or standing as plaintiff than the corporation would have had if the corporation itself had been plaintiff. The stockholder stands in the shoes of the corporation. He is the mere nominal plaintiff and the corporation is the real party in interest and if the corporation is not in position to attack the transaction, the stockholder may not."

That portion of the judgment appealed from in each case is affirmed.

Van Dyke, P. J., and Peek, J., concurred.