Filed 2/16/24  Terranova v. Simba Growth  CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| CLINT TERRANOVA,<br><br>        Plaintiff, Cross-defendant, and Appellant,<br><br>v.<br><br>SIMBA GROWTH, LLC,<br><br>        Defendant, Cross-complainant, and Respondent;<br><br>ANGEL GARCIA,<br><br>        Defendant and Respondent. | E078764<br><br>(Super. Ct. No. CVPS2102798)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Ronald L. Johnson, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Law Office of Brian C. Unitt, and Brian C. Unitt, for Plaintiff, Cross-defendant and Appellant.

1

Lewis Brisbois Bisgaard & Smith, and Wendy S. Dowse, Defendants, Cross-complainant and Respondents.

I.

INTRODUCTION

Clint Terranova entered into a contract with Simba Growth, LLC, agreeing to sell his property to Simba for $470,000. A week later, Terranova backed out of the agreement because he learned the fair market value (FMV) of the property was $600,000. He then sued Simba and its managing member, Angel Garcia, for various claims all sounding in fraud. Simba and Garcia (collectively, Defendants) responded by filing a cross-complaint against Terranova alleging one cause of action for specific performance. After Terranova amended his complaint, the trial court sustained Defendants' demurrer to Terranova's operative First Amended Complaint (FAC) without leave to amend. The trial court then granted defendant's motion for summary judgment on their cross-complaint and entered judgment for them on the cross-complaint and the FAC.

Terranova appeals, and we affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The FAC's Allegations and Defendants' Demurrers*[1]

---

[1] We assume the truth of the facts as alleged in the FAC unless contradicted by judicially noticeable facts. (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 601.)

Terranova owns a house on North Avenida Caballeros in Palm Springs. In March 2021, Armand Arello and Oscar (last name unknown) came to Terranova's home and discussed buying it on behalf of Simba. During the discussions, Arello and Oscar represented the FMV of the property to Terranova. They explained that they worked with a real estate agent (Garcia) and "their own market comparisons of other properties in the area proved the [FMV]" of Terranova's property.

Terranova later spoke with Garcia by phone. Garcia, as an agent of Simba, offered to buy Terranova's house for $470,000. Garcia explained that the offer was FMV based on market comparisons that he and his staff had compiled, as well as his own experience as an experienced real estate agent and his own market comparisons. Garcia said that Terranova did not need to hire a real estate agent because Simba's offer was FMV and he would save money by not hiring an agent.

Terranova accepted Garcia's offer and the parties entered into a purchase agreement for Terranova to sell his property to Simba for $470,000. Terranova signed the agreement with the understanding that, based on Garcia's representations, the FMV for the property was $470,000.

A few days after signing the purchase agreement, however, other parties contacted Terranova and told him the FMV of the property was $600,000, or $130,000 more than Garcia represented. Terranova thus determined that Garcia had lied to him about the FMV of the property to induce him into selling it at a below-FMV price. Terranova demanded that escrow be canceled, but Simba refused and moved forward with the sale.

3

Terranova responded by suing Defendants for (1) breach of the covenant of good faith and fair dealing, (2) unjust enrichment, (3) fraud, and (4) rescission and cancellation of instruments based on fraud. The thrust of the complaint and its four causes of action is that Defendants fraudulently misrepresented the FMV of Terranova's property.

Defendants demurred to the complaint. The trial court sustained the demurrer, with leave to amend, because Terranova "failed to allege facts other than a representation of the seller's opinion of fair market value."

Terranova then filed the operative FAC, alleging the same four causes of action based on the same material allegations. Like the complaint, the thrust of the FAC and its four causes of action is that Defendants fraudulently misrepresented the FMV of Terranova's property.

Defendants demurred again, arguing that the FAC failed to state a viable cause of action because its four claims "are based solely on the allegation that [they] were obligated to provide their opinion as to the fair market value of the parcel of real property owned by [Terranova]." The trial court sustained the demurrer, this time without leave to amend.

B. *Cross-Complaint and Summary Judgment*

While their first demurrer was pending, Defendants filed a cross-complaint against Terranova alleging one cause of action for breach of contract and seeking specific performance of the parties' purchase agreement. After the trial court sustained their

4

demurrer to the FAC without leave to amend, Defendants moved for summary judgment on their cross-complaint.

Defendants argued in their summary judgment motion that Terranova breached the purchase agreement—a valid and enforceable contract—by backing out of it during escrow without justification. They presented evidence that Terranova had bought five properties in the past, as well as text messages between him and Garcia from before their phone conversation. During that exchange, Terranova said Garcia's offering price of between $430,000 and $530,000 was in Terranova's "ballpark range." Defendants also submitted a declaration from Garcia stating that Simba offered $470,000 for Terranova's property, but the declaration did not mention anything about FMV beyond generically stating that representations about FMV are opinions.

Terranova opposed the motion on several grounds, including that Garcia fraudulently induced him to sign the purchase agreement by falsely representing the FMV and that the agreement was invalid due to mutual and unilateral mistake. Terranova did not dispute that the parties had entered into a contract, but argued that it was unenforceable because of Garcia's fraud and/or mistake.

Terranova submitted a declaration in support of his opposition largely mirroring the FAC's allegations. Among other things, Terranova declared that Garcia represented that the FMV for the property was $470,000, and that Garcia reached this figure based on his "experience in the area and expertise as a licensed professional." Terranova thus

5

signed the purchase agreement based on his understanding that Garcia's offer accurately reflected the property's FMV.

In a supplemental declaration submitted with Defendants' reply, Garcia stated that he never told Terranova his opinion as to the FMV of Terranova's property. Garcia denied that anyone from Simba, including himself, would use their professional judgment to determine the FMV of the property. Instead, Garcia (on behalf of Simba) only offered to buy the property for $470,000. Garcia also denied that Armand and Oscar visited Terranova's property or spoke to him about selling it.

The trial court granted Defendants' motion for summary judgment. The court found that Defendants met their burden of proving Terranova breached the purchase agreement, and then found that Terranova failed to prove a valid defense. In rejecting Terranova's fraudulent inducement defense,[2] the court found that Garcia's representations as to the FMV of the property were not actionable as fraud because "a statement regarding the fair market value of a property is only actionable as fraud if it is accompanied by other material false misrepresentations," and "[a] statement regarding the fair market value of property by itself is not enough to support a claim for fraud."

---

[2] The trial court's rulings on Terranova's other defenses are not relevant because he has abandoned them on appeal.

6

The trial court thus entered judgment for Defendants on their cross-complaint and the FAC.  Terranova timely appealed.

III.

DISCUSSION

Terranova argues the trial court erroneously sustained the demurrer to the FAC without leave to amend because (1) the FAC stated a valid claim for fraud and thus he was entitled to rescission, and (2) he should have been granted leave to amend to allege additional facts to support his claims and an additional cause of action under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200).  He argues the trial court erroneously granted summary judgment because (1) Defendants failed to plead and prove adequacy of consideration, a necessary element for specific performance, and (2) there are triable issues of fact as to his defense of fraud.  We find no error and affirm.

A.  *Standards of Review*

"'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law." (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206.)  When a trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has

7

abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The plaintiff bears the burden of proving the complaint may be amended to state a viable cause of action. (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259-260.)

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 25.) Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

B. *Demurrer to FAC*

Defendants argued, Terranova agrees, and the trial court found that the FAC's four causes of action turn on Terranova's allegation that Defendants fraudulently induced him into signing the purchase agreement by misrepresenting the FMV of his property. Terranova thus concedes (if implicitly) that the FAC's claims, all of which sound in fraud, rise and fall with that allegation. We agree with Defendants that the FAC fails to

8

state a viable claim for fraud, and thus the trial court properly sustained their demurrer to the FAC.

The elements of fraud are: "'(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage.'" (*Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1557.) "Fraud allegations 'involve a serious attack on character' and therefore are pleaded with specificity. [Citation.] General and conclusory allegations are insufficient. [Citation.]" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469.) The normal policy of liberally construing pleadings against a demurrer will not be invoked to sustain a fraud cause of action that fails to set forth such specific allegations. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

Defendants argue the FAC fails to allege sufficient facts to satisfy the first and fourth elements of fraud (misrepresentation and justifiable reliance) because the statements Garcia and Simba employees made about Terranova's property's FMV are nonactionable opinions and, even if they made a misrepresentation, Terranova did not justifiably rely on them. We agree on both points.

Expressions of opinion are generally not considered statements of fact and therefore they usually cannot support a fraud claim. (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 308 (*Neu-Visions*).) "A representation is an opinion "'if it expresses only (a) the belief of the maker, without

certainty, as to the existence of a fact; or (b) his judgment as to quality, value . . . or other matters of judgment."'" (*Graham v. Bank of America, N.A.*, *supra*, 226 Cal.App.4th at pp. 606-607)  Statements concerning a product's value thus are generally nonactionable statements of opinion, not fact.  (*Neu-Visions*, *supra*, at p. 308.)  Instead, "[a] statement of value may become a basis for fraud claims only if coupled with other facts, circumstances or false representations."  (*Kahn v. Lischner* (1954) 128 Cal.App.2d 480, 488 (*Kahn*).)

For instance, misrepresentations about a rental property's value, coupled with false statements about the income it produced the year before, supported a fraud claim. (*Stumpf v. Lawrence* (1935) 4 Cal.App.2d 373.)  In another case, allegations that a defendant fraudulently appraised a property using outdated, incomparable home sales to induce a plaintiff to buy the property with a mortgage more favorable to the defendant, stated a viable claim for fraud.  (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959.)  On the other hand, allegations that a home appraised higher than the defendant's appraisal from five years before did not support a fraud claim.  (*Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at pp. 1471-1472.)

The FAC makes no allegations about other "facts, circumstances, or false representations" that suggest Defendants' statements about the FMV of Terranova's property were anything other than their opinion.  The FAC alleges only that Defendants told Terranova that the FMV of his property was $470,000 based on their market analysis and expertise.  This, without more, fails to allege sufficient facts showing that

10

Defendants' statements were actionable misrepresentations of fact instead of nonactionable statements as to the property's value, which is "quintessentially a matter of opinion, not a statement of fact." (*Neu-Visions*, *supra*, 86 Cal.App.4th at p. 310; see also *id.* at pp. 308-310 [accountant's statement that property would appraise at $3 million was nonactionable opinion in part because plaintiffs knew the accountant was not a professional appraiser]; *Padgett v. Phariss* (1997) 54 Cal.App.4th 1270 [real estate agents' misrepresentations about property's FMV not actionable because they were opinions].) This is particularly true given that Terranova had the opportunity and ability to verify the accuracy of Defendants' statements. (See *Alberda v. Smith* (1934) 2 Cal.App.2d 74, 79 ["It is the general rule that statements as to value, where they are given as mere matters of opinion and where the opportunity is present to ascertain the truth thereof and to ascertain the real value, are matters of opinion only."].) These principles apply with greater force in the context of home values, which are inherently based in part on opinion. (See *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 607 ["An appraisal is 'an opinion as to the market value' of a property . . . ."]; see also *Kahn*, *supra*, 128 Cal.App.2d at p. 487 [noting that property owner may testify to property's value "even though experts have testified to widely varying valuations"].) In short, the FAC fails to allege sufficient facts suggesting that Defendants' statements were statements of fact, not opinion.

11

Terranova points to an exception to the general rule that a statement purporting to express an opinion may support a fraud claim when made by someone with "superior knowledge or special information."  Putting aside our conclusion that the FAC fails to allege facts showing that Defendants' representations were anything other than their opinions, this exception applies only "'when one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, *and the other party* is so situated that he may reasonably rely upon such supposed superior knowledge or special information.'"  (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 893, italics added.)  Neither element is alleged in the FAC.

Examples where a defendant's superior knowledge of the subject matter made the defendant's purported opinion actionable include (1) a sales agent's representations that a condominium building with serious, hazardous structural problems was nonetheless "luxurious" and "outstanding investment" (*Cooper v. Jevne* (1976) 56 Cal.App.3d 860, 865), (2) a realtor's opinion that the purchaser of a particular lot had an enforceable access easement (*Southern California etc. Assemblies of God v. Shepherd of Hills etc. Church* (1978) 77 Cal.App.3d 951, 959), and (3) credit rating agencies' ratings of investment products based on non-public, confidential information (*Public Employees' Retirement System v. Moody's Investors Services, Inc.* (2014) 226 Cal.App.4th 643, 646-666).

12

Here, however, the FAC fails to allege facts showing that Defendants had superior knowledge about the value of *Terranova's own property.* Terranova points to the FAC's allegations that Garcia claimed his offer was based on his real estate expertise and research, but the value of a property for sale is "generally [contingent upon] factors within the knowledge of the seller or easily ascertainable by the seller." (*Greif v. Sanin* (2022) 74 Cal.App.5th 412, 435; see Evid. Code, § 813, subd. (a) [property owner may testify as to property's value]; *Kahn*, *supra*, 128 Cal.App.2d at p. 487 ["[T]he law generally assumes one will have some knowledge of the value of that which he owns."].) Simply put, there are no allegations that suggest an "inequality of knowledge" between Defendants and Terranova about *his own property* that would render Defendants' opinions actionable misrepresentations of fact. (*Neu-Visions*, *supra*, 86 Cal.App.4th at p. 310.)

What's more, Terranova did not reasonably rely on Defendants' statements, regardless of whether they were Defendants' honest opinions or misrepresentations. Justifiable reliance exists only when the circumstances make it reasonable for the plaintiff to accept the defendant's statements without an independent inquiry or investigation. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 864.) "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." (*Ibid*.) "[I]f the conduct of the [plaintiff] in the light of his own intelligence and information, *or ready availability of information*, was manifestly unreasonable, he will be denied a recovery." (*Kahn*, *supra*,

13

128 Cal.App.2d at p. 489, italics added.) "Justifiable reliance is ordinarily a question of fact that is not properly determined on demurrer, but 'whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts,' which facts include consideration of 'the knowledge, education and experience' of the person whose reliance is at issue." (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1111.)

As pled in the FAC, Terranova's reliance on Defendants' statements about his property's FMV was unreasonable as a matter of law. According to the FAC, Simba employees Armand and Oscar approached Terranova unprompted and told him that their employer, a real estate agent (Garcia), wanted to buy his property. Garcia then spoke with Terranova and stated that the property's FMV was $470,000. Based on these interactions—and nothing more—Terranova agreed to sell his property for $470,000, believing it was a fair offer. Terranova then signed the purchase agreement, which stated in relevant part: "[Terranova] understand(s) that [Simba] is a private investment company that is buying real estate to make a profit and may be purchasing the Property for immediate resale and profit even as soon as the day of closing . . . [Simba] is a professional real estate investor that holds an active real estate license. Neither [Simba] nor any of [its] officers or employees represents [Terranova] in this transaction."

The FAC thus makes clear that Defendants were trying to buy Terranova's property to make a profit. In our view, it was entirely unreasonable as a matter of law for Terranova to blindly rely on their representations about the FMV of *his own property*

14

without taking any steps to verify whether their offer was fair before signing the purchase agreement. (See *Konda v. Fay* (1913) 22 Cal.App. 722, 726 [a party "should not be permitted to blindly rely upon statements of interested parties when means of correct information was at hand."].) As the FAC states, Terranova learned from "other parties" days after signing the agreement that his property's FMV was considerably higher, which suggests he could have easily learned the true value of his property before agreeing to sell it to Simba, making his reliance on Defendants' representations even more unreasonable. (See *Kahn*, *supra*, 128 Cal.App.2d at p. 489 [reliance on representation not justifiable when readily available information refutes it].) "When the parties have an equal opportunity to determine value, and both are of common intelligence, the fact that one party neglects to take an opportunity to determine the property's value does not allow that party to avoid the contract merely because the other party has fixed an inflated value to the property . . . . The transaction does not become fraudulent merely because a party made a bad bargain." (1 Miller & Star, Cal. Real Est. § 1:152; *Kahn*, *supra*, at p. 490.) These principles fully apply here.

Because we conclude the FAC failed to sufficiently plead a misrepresentation of material fact and justifiable reliance, none of its causes of action states a valid claim. The trial court thus properly sustained Defendants' demurrer to it.

We also conclude the trial court properly denied Terranova leave to amend. When opposing Defendants' demurrer to the FAC, Terranova asked for leave to amend if the trial court sustained the demurrer, so that he could allege additional facts concerning "(1)

15

his right to cancel the [purchase] agreement; (2) the specifics of the fraud allegations . . . ; and (3) . . . an unfair businesses practice claim disgorging any unjust enrichment." On appeal, Terranova notes that he made this argument in the trial court, but only argues that he should have been granted leave to amend to allege a UCL claim. We therefore address only that issue.

"'[T]he UCL prohibits as unfair competition "any unlawful, unfair or fraudulent business act or practice." [Citation.] The statute has been found to prohibit "wrongful business conduct in whatever context such activity might occur." [Citation.]'" (*People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 888.) The statute "'"borrows" violations from other laws by making them independently actionable as unfair competitive practices.' [Citation.]" (*Id.* at p. 889.) Any actionable violation of the law is actionable under the UCL. (See *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.* (2003) 104 Cal.App.4th 508; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1102-1103 ["Virtually any law—federal, state or local—can serve as a predicate for a section 17200 action."].)

Terranova argues Defendants' alleged misrepresentations violated a realtor's duty not to misrepresent the value of real property (Bus. & Prof. Code, § 10117.3, subd. (a) ["No [real estate] licensee shall knowingly or intentionally misrepresent the value of real property"]), and the realtor's statutory duty of candor imposed by Business and

16

Professions Code section 10176, subdivisions (a)[3], (b), (c), and (g).[4] Terranova thus seeks to assert a UCL claim against Defendants based on their alleged violations of these statutes.

For the reasons outlined above, the FAC fails to allege facts suggesting that Defendants' representations were statements of fact, not their opinion. The FAC also alleges no facts (and Terranova does not offer any he could allege) showing that Defendants knew that their representations about the FMV value of Terranova's property were false or misleading. The FAC's conclusory allegation that Defendants "had lied to" Terranova about the property's FMV to induce him to sell at a lower price is insufficient to show that Defendants knowingly or intentionally made false representations, because the allegation does not identify how Defendants knew their offer misrepresented the property's true FMV. (See *Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1472; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 347 [conclusory allegations that omissions were intentional and for the purpose of defrauding plaintiffs to purchase stock

---

[3] Terranova's opening brief first cites "subdivision (1)" of the statute, which does not exist. We assume he meant to cite subdivision (a).

[4] These provisions state that the Real Estate Commissioner may, under certain circumstances, suspend or revoke a realtor's license if the licensee is "guilty" of "(a) Making any substantial misrepresentation," "(b) Making any false promises of a character likely to influence, persuade, or induce," (c) "A continued and flagrant course of misrepresentation or making of false promises through licensees," and "(g) The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission, or profit or the failure of a licensee to reveal to the buyer or seller contracting with the licensee the full amount of the licensee's compensation, commission, or profit under any agreement . . . ."

insufficient to state fraud claim].)  Terranova's proposed UCL claim turns on the same general, conclusory, and insufficient allegations of fraud, and likewise fails to state a viable claim under the UCL based on purported violations of Business and Professions Code sections 10117.3 and 10176.

Because Terranova's proposed UCL claim rests on the same premise as his insufficiently pled fraud claims, and because he fails to show how he could plead additional facts to cure these deficiencies and state a viable UCL claim, we conclude the trial court properly denied him leave to amend.  We therefore affirm the judgment sustaining Defendants' demurrer to the FAC without leave to amend.

C.  *Summary Judgment*

The trial court granted summary judgment to Defendants on their cross-complaint alleging one claim for breach of contract, finding that the parties had a valid contract (the purchase agreement), Terranova breached it by refusing to go forward with the sale of his property, and he had no valid defenses that would excuse his nonperformance or permit him to rescind the contract.  The court thus ordered specific performance of the purchase agreement.  We find no error.

Terranova effectively conceded in his opposition to Defendants' summary judgment motion that Defendants had met their initial burden of proving their breach of contract claim.  He instead raised various defenses to enforcing the contract, including that (1) the contract was unenforceable due to fraud, bilateral mistake, and unilateral mistake, (2) he was entitled to cancel the contract because it was a unilateral option to

18

purchase, and (3) Garcia violated his duty as Terranova's agent. Terranova also argued Defendants' motion should be denied because their separate statement was deficient.

On appeal, Terranova argues for the first time that Defendants failed to meet their initial burden because they did not plead and prove adequate consideration, which is a necessary element for specific performance. He also reasserts his argument that the purchase agreement is unenforceable because he was fraudulently induced into it by defendants' misrepresentations.

Terranova forfeited his adequate-consideration argument because he did not raise it in the trial court. We therefore decline to consider it. (See *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.)

As for Terranova's argument that defendants fraudulently induced him into signing the purchase agreement, we conclude he failed to show a triable issue of material fact.

A party to a contract may rescind the contract if that party was fraudulently induced into it. (Civ. Code § 1689, subd. (b)(1); *Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 301.) Like a cause of action for fraud, the contract defense of fraudulent inducement requires a showing of justifiable (reasonable) reliance. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.) Whether a plaintiff's reliance was reasonable is a question of fact except when the undisputed facts do not permit a reasonable difference of opinion. (*West v. JPMorgan Chase Bank, N.A.* (2007) 214 Cal.App.4th 780, 794.)

Even assuming Terranova's version of events is accurate and that Defendants misrepresented the FMV of his property to induce him to sell it at a discounted price, the record shows that his reliance on their alleged misrepresentations was unreasonable as a matter of law. A plaintiff's experience, intelligence, and sophistication are relevant factors in determining whether the plaintiff relied on a defendant's misrepresentations. (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1196.) Terranova has bought at least five properties since 1995. He thus knew, or should have known, that the sale of property—particularly when it involves a sale approaching half a million dollars—is a significant transaction that requires each party to do its own due diligence. Assuming Defendants made the representations Terranova claims they made, Terranova unreasonably relied on them without doing *any* research into his own property's FMV. Terranova "knew or should have known the value of his own property before selling it." (*Greif v. Sanin*, *supra*, 74 Cal.App.5th at p. 433.)

Text messages between Terranova and Garcia reinforce our conclusion that Terranova's reliance on Defendants' purported misrepresentations was unreasonable. Garcia texted Terranova asking if he was interested in selling his property, to which Terranova replied, "Which house are you making an offer on and how much?" Garcia responded that he wanted to buy the Caballeros property and make an offer on it. Terranova replied, "I am not looking to sell unless someone offers me a price that will make me get out of bed. [¶] I get at least 3 offers a week on my house. If anything might just talk to a real estate agent and put it on the market as is." Garcia explained,

20

"As Investors we will pay for all the closing costs so you [won't] have to worry about tens of thousands of dollars in junk fees and commissions.  Our offer would have to be in the range of $430,000 - $530,000.  Are we in your ballpark range?"  Terranova replied, "That seems within the ballpark since [I] would [have] put it up for 580k since people like to talk down a little and then paid the fees myself."

This exchange shows that Terranova (1) owned at least two properties at the time, (2) people routinely made offers on his property before Defendants made theirs, (3) $470,000 seemed like a fair price to Terranova, (4) he knew he would save money if he sold the property without a real estate agent, and (5) he knew that property buyers generally offer below the seller's asking price.  All of this suggests that Terranova knew well how property sales usually work—including that buyers often want to pay less than the seller asks—which makes his blind acceptance of Defendants' offer and purported representations about the property's FMV all the more unreasonable.

Because we conclude Terranova's reliance on Defendants' alleged misrepresentations was unreasonable as a matter of law, he failed to show that he was fraudulently induced into the purchase agreement such that it was unenforceable or he was entitled to rescind it.  The trial court thus properly granted Defendants' motion for summary judgment and entered judgment for them on their cross-complaint.

IV.

DISPOSITION

The judgment is affirmed.  Defendants may recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


MENETREZ
J.